MAIN *v.* GRAND RAPIDS, GRAND HAVEN & MUSKEGON
RAILWAY CO.

1. EVIDENCE—REBUTTAL—TRIAL—COMMENT BY COURT.
   Where, in a personal injury case, a physician, called by
   defendant, testified as to what plaintiff said to him about
   her headaches, that she said "something of that sort," that
   he "gathered that inference," the trial court properly per-
   mitted her, on rebuttal, to testify as to what she said
   instead of confining her answers to whether or not she
   so stated as the doctor testified, and on objection it was
   not error for the court to comment, "The trouble was
   that the doctor himself only was able to give his im-
   pression or inference from what she said."

2. DAMAGES—FUTURE DAMAGES—RULE.
   Future damages are limited to such as the evidence makes
   reasonably certain will necessarily result from the injury
   sustained.

3. SAME—PERMANENCY—EVIDENCE—INSTRUCTIONS.
   Where there was no evidence that plaintiff's injuries were
   permanent, except as to a slight scar upon the face, in-
   structions that plaintiff would be entitled to recover for
   future damages without distinct differentiation or direct
   instruction that under the evidence there was no element
   of permanency for them to consider, except as to the cut
   upon the face, *held,* reversible error.

Error to Kent; McDonald, J.   Submitted June 5,
1919.   (Docket No. 49.)   Decided October 6, 1919.

Case by Elva Main, an infant, by her next friend,
against the Grand Rapids, Grand Haven & Muskegon
Railway Company for personal injuries.   Judgment
for plaintiff.   Defendant brings error.   Reversed.

*Carroll, Kirwin & Hollway,* for appellant.

*John W. Powers,* for appellee.

On mental suffering arising from contemplation of disfigure-
ment or mutilation as element of damages for personal injuries,
see notes in 15 L. R. A. (N. S.) 775 and L. R. A. 1916E, 898.

Steere, J. Plaintiff recovered a verdict and judgment against defendant in the circuit court of Kent county for personal injuries sustained in a rear-end collision between two of defendant's cars at a substation called Walker, on its line.

The accident occurred on Decoration day, May 30, 1918. Plaintiff, a young married woman then 20 years of age, had on that day been visiting with her husband near the village of Coopersville and in the evening took one of defendant's cars to return to their home in Grand Rapids. When the accident occurred plaintiff's husband was sitting with his back to the smoking compartment in the front end of the car which they took, while plaintiff sat on the opposite seat facing him. The car in which plaintiff was a passenger reached Walker station about 9 o'clock where it stopped, and just as it was starting to move forward another came around a curve west of the station at its rear and ran into it with sufficient violence to knock off its tail lights, throw passengers standing in the aisle flat upon the floor, shorten the electric circuit and put out all its lights, break the glass in the partition of the smoking compartment, and drive the struck car along the track a distance of 2½ or 3 city blocks before it stopped. Plaintiff's account of the accident and her injuries, confirmed in outline by her husband, is in part as follows:

"I was seated on first seat facing the smoker. It threw glass into my face and cut my face, and hurt the back of my neck; it threw my neck backward; the broken glass cut my face, the glass broken was that between the smoker and the other car; this is the scar (indicating scar), and it made me awful nervous; made me shake. That condition lasted until the next day about noon; I did sleep a little while that night but not very long. My head ached; and the next week I had headaches; right across my forehead and across the back of my neck, just below my hair; I have these about a week, sometimes three times, some-

times only once a week; I had them about the same the week following the accident."

At the time of the trial, four months later, she had a discolored scar upon her face about half an inch long.

Upon the trial it was admitted by defendant that there was a collision at the time and place claimed, one car running into the rear of another, and that the plaintiff, who was a passenger on the car which was run into, received some injuries, the extent of which was in dispute. In extenuation of the collision it was claimed and shown by defendant that it was a dark, foggy night and the rail slippery, making it difficult to stop cars promptly. Of this counsel for defendant said to the jury in his opening statement:

"Of course that does not relieve us from responsibility and that we concede, but as bearing upon the question of negligence of this defendant, we shall show you these facts, and as I have said, we have admitted and do admit the responsibility to this plaintiff to the extent of the injuries suffered; and will depend on you to award such sum as is reasonable and just between the parties to this suit."

The jury awarded a verdict of $1,500 and judgment was rendered thereon, after which defendant moved for a new trial on various grounds, the most strenuously urged being that the verdict was excessive.

Upon the claim that the verdict was excessive and contrary to the weight of evidence the court said in part:

"The jury evidently accepted plaintiff's theory of the case, that is, they found that the defendant was negligent and that its negligence was the proximate cause of her injuries; that plaintiff was in good health prior to the accident but afterwards suffered from severe headaches and nervousness, and that she received a cut upon the face which would be a permanent disfigurement. * * * The cut upon the face

was in a noticeable part of the cheek and was of a permanent character. There is no exact rule by which damages for such injuries can be determined. Their determination should rest in the sound judgment of the jury, who saw the disfigurement and heard all of the testimony. * * * It seems to me that under the circumstances the verdict is not unreasonable or excessive."

Under its various assignments of error defendant asks reversal on three principal grounds which may be stated as follows:

*First,* That the court erred in giving plaintiff's fifth request to charge, and by the charge permitted the jury to speculate in their award of future damages to plaintiff for permanent injuries, including headaches she might thereafter suffer, of which defendant contends there was no evidence that such would necessarily result.

*Second,* That the court erroneously permitted plaintiff against objection to testify in rebuttal of testimony by Dr. Baker, a witness of defendant who had professionally examined her as to her injuries, as to what was said, instead of confining her answers to whether or not she so stated as the doctor had testified, and when ruling upon the objection saying in the presence of the jury:

"The trouble was that the doctor himself only was able to give his impression or inference from what she said. I think under these circumstances this question is proper."

*Third,* That the jury rendered an unreasonable, substantial and excessive verdict for a trivial injury.

Defendant's second objection has little merit. Dr. Baker, who examined plaintiff shortly before the trial, had testified she then stated to him she had headaches at intervals before the trial and more than once a month, "something of that sort," he could not recall just what she said but he "gathered that inference"

from the conversation he had with her on the subject. When called in rebuttal her attention was called to that portion of the doctor's testimony with the inquiry, "What is the fact?" To which objection was made and the court allowed her to answer, with the comment complained of. She then replied, "He asked me how often I had headaches before May 30th, and I told him once a month." In view of the doctor's testimony as to the inferences he gathered without recalling just what language she used, we see no error in permitting the answer she gave to the question asked.

The other two somewhat related grounds call for more serious consideration. The injuries alleged in plaintiff's declaration for which she claims damages are that she—

"became, now is, and always will be permanently injured in her neck and spine and her nervous system is and always will be weakened and impaired, and her face was, now is and will be permanently disfigured, and she will suffer in the future great bodily pain, mental distress and annoyance because of her injuries and disfigurement."

Defendant contends that the court by its charge in effect authorized the jury to award damages for plaintiff's claimed headaches and nervousness as permanent injuries, as to which there was no proof, and also to conjecture as to its recurrence or possible continuation of which there was no testimony amounting to a reasonable certainty. Of the issue upon that proposition the trial court said in denying defendant's motion for a new trial:

"The plaintiff's evidence showed that prior to her injury she had no headaches except during her menstrual periods, but that afterwards they were severe and of frequent occurrence. The defendant claimed that they were due to other causes. These claims present a question of fact for the jury and were prop-

erly submitted. There was no evidence that the headaches and nervousness were of a permanent character, and the jury was not permitted to so find, but it was their business to determine from the evidence the length of time that they would continue."

The charge as it appears in the record does not contain in direct language any mandate that the jury is not permitted to so find, beyond what may be inferable from the instruction as to how that subject may be considered. Instructing the jury that there was no proof of damages for loss of time, services and medical expense, the court stated the elements of damage to be considered under the evidence and pleadings—

"would be pain and suffering, at the time of the accident and afterwards, or for such time as you find she may continue to suffer from headache and her damages from humiliation for disfigurement."

When the subject of damages was next referred to the court said in part:

"The damages to be awarded as compensation in cases of this nature, are contingent on the extent, nature and permanency of the injuries suffered * * * and if you find that defendant's employees were negligent, that the injuries suffered are not serious but superficial then the sum of damages to be awarded should be much less in extent than if they were serious and permanent."

The only further direct reference in the charge to headache and nervousness as elements of damage appears in plaintiff's request number 5 given by the court, as follows:

"If you shall find a verdict for the plaintiff, then in estimating the damages you are to consider the health and condition of the plaintiff before the injury complained of, as compared with her present condition and how long her present condition may continue; and if you find that the plaintiff's nervous system has been impaired, and that she is now subject to sick headaches, and that condition is the natural and prox-

imate consequence of the injury sustained by the defendant's negligence, then you are to consider the same in awarding damages, and if you find that the plaintiff's nervous system has been impaired and she suffers from headaches as alleged in her declaration and that such condition is the result of the injury complained of, then you will consider also in estimating damages how long such condition may continue as far as the evidence shows."

Of the claimed disfigurement, the only evidence of injury or physical impairment resulting from the accident apparent at the time of the trial was a superficial scar on her face about a half inch in length, the discoloration of which had become less noticeable than at first, as she admitted, and which would eventually fade, as physicians testified, to a white line almost imperceptible except on close inspection. At the time of the accident she with her husband took another car and returned to Grand Rapids, there transferring to a city car from which they walked two blocks to their home and retired without finding it necessary to call for or consult a physician. The next morning plaintiff walked from her home to that of her sister, a considerable distance, and from there went down town to the office of Dr. Buhl, over a drug store, to have him treat her face. Dr. Buhl was not called as a witness, and as far as shown she did not thereafter call or consult any physician in regard to her injuries, until her medical witness, Dr. Slemons, examined her preparatory to being called as such. She testified that otherwise than by its appearance the scar occasioned her no annoyance, pain or discomfort. Before and up to the time of the accident she had been employed in a cigar factory operating a machine, and was so employed at the time of the trial. About a week after the accident she resumed her employment in the factory and worked about three weeks when they went north on their summer vacation for two weeks and

on their return she remained at home for the rest of the summer, during which time she did her own housework, visited her sister and went down town once in a while, and returned to her employment in September, over two weeks before the case was tried. She testified that she did not go to work sooner because of frequent severe headaches and nervousness, saying: "I didn't feel like working when I did work, and I wasn't able to work." Three physicians examined plaintiff shortly before the trial, two of whom were called as witnesses by defendant and one by her. Each observed that she had a goiter. Dr. Slemons, called by plaintiff, testified, as did the others, that aside from the scar referred to he found "no other physical defect or impairment the result of the accident." In his opinion the headaches and nervousness with which she suffered, propounded in a hypothetical question, were the result of the accident and not attributable in any sense to her goiter, but he could not tell from the questions propounded and conditions stated, or from his own examination that her headaches or nervousness would be permanent, saying: "The scar is a superficial condition and the headaches are a nervous condition." Defendant's medical witnesses testified in substance that in their examination they found no sufficient physical injuries to have produced the symptoms and conditions complained of and conceding the headaches, nervousness, etc., to be as claimed, such conditions were not in their opinions traceable to the accident, but entirely attributable to toxic secretions and resulting physical disturbances caused by her goiter.

The cut and resulting scar, called by plaintiff's medical witness "a superficial condition," and the headaches, designated by him as "a nervous condition," with whatever pain, suffering and humiliation they caused were issues of fact for the jury involving injuries for which they could award damages according

as the facts were found. There was evidence that the cut upon her face resulted in a scar of permanent character, the extent and duration of which were for the jury, including for their consideration an element of damages for permanent disfigurement. No proof of permanency and no such element of damages were for their consideration in the issue as to headaches, nervousness, etc. The court told the jury plaintiff would be entitled to recover, under the evidence and pleadings, as the facts were determined by them, "for pain and suffering at the time of the accident and afterwards," or "for such time as you find she may continue to suffer from headache and her damages for humiliation," and that "the damages to be awarded as compensation in cases of this nature are contingent on the extent, nature and permanency of the injuries suffered"; and later, without distinct differentiation or direct instruction that under the evidence the element of permanency was not for the jury, except as to the cut upon her face, the jury were instructed that if they found plaintiff suffered from headaches as alleged in her declaration, resulting from the injury complained of, "then you will consider also in estimating damages how long such condition may continue as far as the evidence shows." If from this the jury might not infer they were authorized to find such injuries permanent, the instruction, as claimed to mean, is not in compliance with the accepted rule in this and other jurisdictions applicable to that class of cases entitling plaintiff to recover damages presently for the reasonably certain consequences which will result from an unhealed or yet remaining injury not shown to be permanent. As broadly stated, it furnishes no clear standard for the jury to follow and opens the door for indulgence in conjecture and speculation as to what the result *may*

be to the point of permanency, of which there is no competent proof. The instruction upon that phase of the case should plainly confine its consideration by the jury to such damages as are proximately shown by the evidence with reasonable certainty to result from the existing injury.

"Only such future damages can be recovered as the evidence makes reasonably certain will necessarily result from the injury sustained." 13 Cyc. p. 139.

Such is the settled rule in this State. *Brininstool v. Railways Co.*, 157 Mich. 172; *Marshall v. Railroad Co.*, 171 Mich. 180; *Kethledge v. City of Petoskey*, 179 Mich. 301; *Matthews v. Lamberton*, 184 Mich. 493; *Norris v. Railway*, 193 Mich. 578. In the *Norris Case* it is said:

"The rule is well settled by these cases that future damages are limited to such as the evidence makes reasonably certain will necessarily result from the injury sustained, and the instruction should have been given in the language there approved."

The judgment is reversed, with costs to defendant, and a new trial granted.

BIRD, C. J., and MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.

The late Justice OSTRANDER took no part in this decision.