### SELMAN v. COCKRELL et al.

No. 17474.

Court of Appeal of Louisiana. Orleans.

Dec. 2, 1940.

As Amended on Denial of Rehearing
Jan. 13, 1941.

Cobb & Saunders and Charles Marshall, all of New Orleans, for appellant.

Eugie V. Parham, of New Orleans, for appellees.

JANVIER, Judge.

Mrs. Francis J. Selman, having sustained injuries in an automobile accident, which, it is now conceded, was caused by the negligence of Winston C. Cockrell, seeks monetary redress for her injuries and especially claims to have, suffered great worry and mental anguish because of her fear that she might suffer a miscarriage, or abortion, having been, at the time of the accident, about five months in pregnancy. She prays for judgment for $1,500. Mr. Selman joins in the suit, seeking recovery of $50, alleging that to be the amount expended by him as the charge of the doctor who treated Mrs. Selman.

The driver of the offending automobile was admittedly, at the time, operating that car within the scope of his employment by Sinclair Refining Company, which corporation had previously secured a policy of liability insurance from Zurich General Accident and Liability Insurance Company, Limited, and, as a result, both of these corporations are made defendants and solidary judgments are asked for against all three defendants.

There was judgment for Mrs. Selman for $300 and for Mr. Selman in the sum of $25. Only Mrs. Selman has appealed. She contends that the amount awarded her should be increased. It thus appears that only the question of quantum is presented.

The physical injuries actually sustained by Mrs. Selman were not in themselves serious, but she was at the time, as we have said, about five months in pregnancy, and for some time she and her physician had grave fear that she might suffer the premature loss of the child, and it is this fear which, it is contended, should form the basis of the major portion of her claim. Fortunately, her fears were not realized. The child was born at the proper time and in perfectly normal condition.

The accident occurred on March 12, 1939. Dr. Murphy called on Mrs. Selman on that day. He makes no mention of any serious injury, but states that "she was highly nervous at the time and it was necessary to put her to bed". She was required to remain in bed for one week and to remain confined to her room for an additional two weeks, during this second period being permitted to go from the bed to a chair and also to the bathroom. The doctor states that on the day after the accident "there was noticed a bloody discharge, vaginal discharge", which indicated to him "the possibility of an abortion". Mrs. Selman was advised that, should a child be born at that time, it could not possibly live, and she was admonished to be extremely careful in an effort to prevent such a catastrophe. For three weeks, the doctor was fearful of the possibility of miscarriage and it was not until after that period that he felt, with reasonable certainty, that the pregnancy would continue normally.

There can be no doubt that during those three weeks Mrs. Selman must have suffered great mental distress and that she must at first have believed that she would probably lose the expected child, and we think that the fact that she had previously suffered a miscarriage no doubt led her to believe that there was greater danger of such an occurrence than there would have been in the case of one who had shown no previous susceptibility to such unfortunate occurrences. Then, too, the loss of the first child no doubt made her all the more anxious for a successful outcome on this occasion and made her all the more desirous for a normal period of pregnancy and for a normal birth of a healthy child. Her actual physical injuries seem to have been very slight. After the accident and after her husband had been taken to his office, she herself drove the automobile home.

What, then, is the proper award for such slight physical injuries accompanied by three weeks of dreadful fear that an abortion will be sustained and—we may add here —by an additional period of approximately three months during which there were no doubt recurrent fears that possibly the child might be born affected by the nervous shock and trauma to which the mother had been subjected. We think that the $300 allowed is inadequate to compensate Mrs. Selman for such mental distress as must have been suffered.

In Muller et ux. v. Herrin Motor Lines, Inc. et al., La.App., 184 So. 406, 409, we considered an award made to a woman who suffered slight injuries and who, at the time of the accident, had been pregnant for one month. To show the similarity between those facts and these, we quote from our opinion in that case: "Mrs. Muller was permitted to recover the sum of $750 for the injuries she received. Her hurts, while similar to those of her husband in that they

consisted of contusions and bruises, were more serious due to the fact that she was one month in pregnancy at the time of the accident. She states that, on the same evening of the occurrence, she had a bloody discharge which was followed by another about four days later. She also declares that, during the entire period of her pregnancy, she feared that her child might be deformed at its birth. It is true that the child, when born, was perfectly normal but we readily recognize the fact that the mental anguish Mrs. Muller suffered during the period of her pregnancy was considerably aggravated by the injuries she sustained. After granting due allowance for her apprehension, we feel that the award of the district judge sufficiently compensates her for the pain and suffering she endured and that it is neither excessive nor inadequate."

We affirmed a judgment in favor of Mrs. Muller for $750. Her physical injuries were somewhat more severe than were those of Mrs. Selman, though they consisted only of bruises and contusions.

In Gares et al. v. Abate, La.App., 189 So. 165, 166, is found a case also involving very similar injuries and the same cause for apprehension concerning the danger of an abortion. There we found the following: "Mrs. Blereau was three months in pregnancy at the time she received her injuries which consisted of contusions and bruises to her body and a laceration of the right parietal bone of her head which was stitched at the Charity Hospital. She declares that she suffered internal pains after the accident; that, on the day following it, she had violent vomiting spells; that thereafter, she was subject to nervous spells for a period of two weeks and that she was in a state of anxiety until her baby was born as she feared that her injuries might affect the safe delivery of the child." -

We approved an award of $700.

On behalf of defendant, our attention is directed to the case of Favalora v. New Orleans Railway & Light Company, 143 La. 572, 78 So. 944, and it is said that that decision of the Supreme Court is authority for the view that, where there is no actual abortion, the award should be substantially less than what we have approved in the Muller and Abate cases, for, in the Favalora case, only $300 was awarded to the plaintiff. That case requires explanation, for it would appear, from a reading of the opinion alone, that there was fear of an abortion just as there was in the two other cited cases. Reference to the original record, however, shows that in the Favalora case

no claim was made for mental anguish attendant upon the fear of abortion. The claim was for damage sustained as the result of an actual abortion, which it was claimed had occurred. There was testimony of Mrs. Favalora to the effect that she had actually sustained an abortion shortly after the accident and defendant denied that there had been such an occurrence. All that the Supreme Court said was that the proof that there had been an abortion was not convincing. Had Mrs. Favalora not claimed to have had an abortion and had she shown that she was actually pregnant and feared an impending abortion, then the facts would have been the same as those presented here and in the Muller and Abate cases.

Of course, it is not possible, in any suit for personal injuries or mental anquish, to fix with mathematical certainty any standard by which awards should be gauged, but we believe that in this case we find facts remarkably similar to those presented in the two cited cases—more so than is usual in damage suits—and we think that, having fixed a standard higher than that allowed here, the amount awarded Mrs. Selman should be increased.

However, the physical injuries of Mrs. Selman were much slighter than those in the other two cases, and we think, therefore, that the amount should not be so large as was allowed there.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is amended by the increase of the amount awarded to Mrs. Francis J. Selman to the sum of $600, with legal interest from judicial demand, and that, as thus amended, it be and it is affirmed, at the cost of appellant.

Amended and affirmed.

## On Rehearing.

PER CURIAM.

Through failure on our part to notice that it was plaintiff who had taken the appeal, when we increased the judgment in this matter we condemned appellant to pay the costs. We intended that the costs should be paid by defendant-appellee.

Accordingly, our decree is amended, and it is now ordered, adjudged and decreed that defendant-appellee pay all costs.

Since the application for rehearing is based solely on this ground, the rehearing is refused.

Decree amended; rehearing refused.