Argued January 20; reversed March 16, 1943

# FEHELY *v.* SENDERS

(135 P. (2d) 283)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*James Arthur Powers,* of Portland, for appellant.

*James C. Dezendorf,* of Portland (Dey, Hampson & Nelson, and Clarence J. Young, all of Portland, and Richard B. Maxwell, of Klamath Falls, on the brief), for respondent.

LUSK, J. This action was brought to recover damages for personal injuries growing out of an automobile accident. There were three automobiles involved—one driven by the plaintiff Lu Elda Fehely; another driven by the defendant William R. Senders, allegedly on behalf of the defendant Lang, Senders & Co.; and the third driven by John J. Foy, allegedly on behalf of the defendant Consolidated Supply Company. On the trial the court granted a judgment of involuntary nonsuit in favor of the defendant Lang, Senders & Co., and submitted the case to the jury as to the other two defendants. The jury, by its verdict, exonerated Consolidated Supply Company and found in favor of the plaintiff and against the defendant William R. Senders. From the consequent judgment the defendant Senders has appealed.

The admission of evidence of mental anguish, claimed to have been suffered by the plaintiff as the result of her injuries, is assigned as error. The plaintiff was six months in pregnancy at the time of the accident. Her injuries consisted of bruises on the left side of her body to the knee, thigh, and head, a cut ear, and a blow on the abdomen caused by striking against the steering wheel of the automobile she was driving. On the advice of her physician she remained

in bed for two weeks after the accident. Her physician also advised her not to use the steps which led to a house-boat on the river where she lived, and for that reason she did not return to the house-boat but moved to her mother's home where she stayed until after the child was born. She was not able to do as much housework as formerly, and was rendered nervous and continued to be so until the birth of the child. She did not sleep well. She testified, over objection, that she was afraid of what the blow on her abdomen might do to the child or might do to herself. This apprehension continued until the baby came and for a few days thereafter, because, as she said, "I didn't know just how the baby was coming out after it got here." There was a normal delivery and normal baby.

The precise question here for decision is whether the apprehension (which in this instance proved to be groundless) of a pregnant woman that her child may be born dead or deformed as the result of an injury to her person is an element of damage. The question has never been passed on by this court, but in a number of other jurisdictions the right to recover damages for mental distress of this character has been sustained. *Bowley v. Duca,* 80 N. H. 548, 120 Atl. 74; *Prescott v. Robinson,* 74 N. H. 460, 69 Atl. 522, 17 L. R. A. (N. S.) 594; *Elliott v. Arrowsmith,* 149 Wash. 631, 272 P. 32; *Gagnon v. Rhode Island Co.,* 40 R. I. 473, 101 Atl. 104, LRA 1917 E 1047; *Macke v. Sutterer,* 224 Ala. 681, 141 So. 651; *Davis v. Murray,* 29 Ga. App. 120, 113 S. E. 827; *Selman v. Cockrell* (La. App.), 198 So. 785; *Gares v. Abate* (La. App.), 189 So. 165; *Muller v. Herrin Motor Lines* (La. App.), 184 So. 406. The only contrary decision of which we are aware is *Nevala v. Ironwood,* 232 Mich. 316, 205 N. W. 93, 50 A. L. R. 1189, where the court likened the case to one

in which a woman who suffered a miscarriage as a result of an assault was denied recovery for consequent grief over the loss of offspring, and said:

> "If grief over actual loss of offspring is too delicate a subject to be weighed by any scales the law has at its command, surely mere apprehensions, proven by time to have been borrowed trouble, are outside the realm of pecuniary compensation."

■ It is established by the decisions of this court that one suffering from injuries to his person due to the negligence of another may recover for mental distress and anguish which directly and as a natural consequence flows from the physical injury whether present or fairly and reasonably to be apprehended. *Smith v. Pacific Northwest Public Service Co.*, 146 Or. 422, 435, 29 P. (2d) 819; *Perry v. Pickwick Stages*, 117 Or. 598, 605, 243 P. 787; *Rostad v. Portland Ry., L. & P. Co.*, 101 Or. 569, 581, 201 P. 184; *Coffey v. Northwestern Hospital Association*, 96 Or. 100, 115, 183 P. 762, 189 P. 407; *Adams v. Brosius*, 69 Or. 513, 517, 139 P. 729, 51 L. R. A. (N. S.) 36; *Boatright v. Portland Ry., L. & P. Co.*, 68 Or. 26, 29, 135 P. 771; *Maynard v. Oregon Railroad Co.*, 46 Or. 15, 18, 78 P. 983, 68 L. R. A. 477. This is the general rule (15 Am. Jur., Damages, 592, § 175; 1 Sedgwick on Damages (9th Ed.) 62, 43i); but there is a marked difference in judicial attitude toward the question of what character of mental suffering is to be regarded as the natural result of a physical injury. The varying views of the courts are well summarized in Am. Jur., *id.*, 606, § 187, as follows:

> "Some courts regard grief, anxiety, worry, mortification, and humiliation which a person suffers by reason of physical injury as component parts of the mental suffering for which damages may be allowed. Others take the view that mental

distress or anguish produced by the operation of the mind in the contemplation of the physical condition to which the injured party is reduced, or in contemplation of any extraneous suffering or inconvenience that such condition might entail, whether it respects the person himself or others, is not to be considered as the natural result of the defendant's wrongful act, and is not a proper element of damages.''

This court has heretofore adhered to the more restricted view above stated. It first announced its position in *Maynard v. Oregon Railroad Co.*, supra, where mental distress resulting from an injured person's contemplation of his inability to work and to support and educate his little girl on account of his condition, was held to be not the natural result of the accident and, therefore, not an element of damage. The court, after stating the general rule, said:

"Such mental distress or anguish, however, as is not the natural result of the accident, but is produced by the operation of the mind in the contemplation of the physical condition to which the injured party is reduced, or in contemplation of any extraneous suffering or inconvenience that such condition might entail, whether it respects the person himself, or others dependent upon him, is not regarded as matter proper to form the basis of consequential damages.''

"So", it was said, "anguish of the mind, wholly sentimental, arising from the contemplation of a disfigurement of the person, cannot be considered for the purpose of swelling the damage.''

Following the decision in the Maynard case, and upon its authority, the court, in *Camenzind v. Freeland Furniture Co.*, 89 Or. 158, 174 P. 139, held that "humiliation and embarrassment, wholly sentimental, arising

from the contemplation of a disfigurement of the person, is too remote and indefinite to constitute a possible element of damage''; and, similarly, recovery for mental anguish caused by the plaintiff's realization that she was unable to pay her bills was denied in *Boatright v. Portland Ry., L. & P. Co.*, supra.

In view of the question now presented we deem it appropriate to reexamine the doctrine of these cases.

To deny recovery of damages for humiliation and embarrassment arising from disfigurement of the person is but to apply logically the restrictive rule of the Maynard case, and we therefore turn first to the decisions on that subject. According to 4 Sutherland on Damages, 4672, § 1243, note 55, the leading case against the allowance of such damages is *Southern Pacific Co. v. Hetzer,* 135 Fed. 272, 1 L. R. A. (N. S.) 288. The opinion was written by Judge Sanborn, who thus forcefully stated the views of the court:

> ''The rule which has been adopted by this court, however, and the rule which seems to us the better one, is that in actions for personal injury the plaintiff may recover for the bodily suffering and the mental pain which are inseparable and which necessarily and inevitably result from the injury. But mortification or distress of mind from the contemplation of the crippled condition and of its effect upon the esteem of his fellows, that mental pain which is separable from the physical suffering caused by the injury, is too remote, indefinite, and intangible to constitute an element of the damages in such a case, and evidence of it is inadmissible. (Citing authorities) Mental pain of this character, the suffering from injured feelings, is intangible, incapable of test or trial. The evidence of it, like that which convicted the alleged witches, rests entirely in the belief of the sufferer, and it is not susceptible of contradiction or rebuttal. Many

other causes, the education, temperament, and sentiment of the sufferer, the mental attitude, the acts and words, of his friends and acquaintances, concur with the accident to cause this mental distress, in such a way that it is impossible to separate and ascribe the proper part of it to the injury caused by the defendant. And the amount of the mental pain caused by any disfigurement necessarily varies so with the character, temperament, and circumstances of the injured person that no just measure of the damages from it can be found. Such mental suffering is too remote, intangible, and immeasurable to form the basis of any just adjudication, and the objections to the testimony of the plaintiff concerning it should have been sustained.''

The opposing view is ably set forth in *Merrill v. Los Angeles Gas & Electric Co.*, 158 Cal. 499, 111 P. 534, 139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559, where, after reviewing the authorities, the court, speaking through Henshaw, J., said in part:

''Physical pain has no existence if it is sought to dissociate it from mental suffering. Physical pain is but one of many forms of mental suffering. If the law contemplated an award of damages solely for physical pain, it is meaningless to say that recovery may also be had for mental suffering. It is equally meaningless to say that the mental suffering must be that occasioned by the physical pain, for then the latter phrase would alone be sufficient to convey the full meaning of the law. Therefore when the law says that a recovery may be had for mental suffering, it means a recovery for something more than that form of mental suffering described as physical pain. What more does it mean? To mean anything it must include the numerous forms and phases which mental suffering may take, which will vary in every case with the nervous temperament of the individual,

his ability to stand shock, his financial condition in life, whether dependent upon his own labor or not, the nature of his injuries, whether permanent or temporary, disfiguring and humiliating, and so through a long category, the enumeration of which it is unnecessary here even to attempt. &ast; &ast; &ast; Shall a jury be not permitted to consider these matters in estimating mental suffering, and is it an answer to say that they are too remote or 'too delicate to be weighed by any scales which the law has yet invented?' They are not remote. They are direct and consequential. They differ in degree with individuals, with their sex, circumstances, and positions in life. But so do men differ in sensing physical pain; so do they differ in the mental suffering occasioned by physical pain alone. &ast; &ast; &ast; In truth the admeasurement of suffering in terms of money is a most clumsy device, but it is the best device which the law knows, and it is a device which the law will employ until some better is discovered. To forbid the consideration of these other elements of mental suffering, because the scales are not sufficiently delicate for their weighing, is equally to condemn the use of the scales in the very cases and for the very purposes now admittedly sanctioned by the law.''

For like reasoning, see *Coombs v. King*, 107 Me. 376, 78 Atl. 468, Ann. Cas. 1912 C, 1121.

On the authority of *Merrill v. Los Angeles Gas & Electric Co.*, supra, the court in *May v. Farrell*, 94 Cal. App. 703, 714, 271 P. 789, approved an instruction authorizing the jury to take into consideration as an element of damage mental suffering occasioned by plaintiff's apprehension of inability to pursue his customary vocation.

That the weight of authority on the question of the right to recover for humiliation caused by a scar or disfigurement is opposed to the rule adopted in

this state may be seen by reference to the decisions and accompanying case notes in *Patterson v. Blatti*, 133 Minn. 23, 157 N. W. 717, L. R. A. 1916 E, 896, Ann. Cas. 1918 D, 63, and *Diamond Rubber Co. v. Harryman*, 41 Colo. 415, 92 P. 922, 15 L. R. A. (N. S.) 775. The Minnesota court in the former case, after citation to many decisions on both sides of the question, said:

"It is well settled that in an action for personal injury mental suffering reasonably certain to be endured in the future may be taken into account in estimating damage. (Citing cases.) We see no sufficient reason why mental suffering of this class should be excepted. The cause is in no sense uncertain. It is no more·intangible or difficult of proof than is mental suffering in general. The fact that it may survive the physical pain does not seem to us decisive as long as it has its inception with the physical injury."

The supreme court of the United States, at a time when the federal courts administered their own common law, announced a view in *Erie Railroad Co. v. Collins*, 253 U. S. 77, 40 S. Ct. 450, 64 L. Ed. 790, contrary to the decision by Judge Sanborn in *Southern Pacific Company v. Hetzer*, supra. Speaking through Mr. Justice McKenna the court said:

"It is asserted against the verdict that it is 'outrageously excessive', caused by the instruction of the court that plaintiff could recover 'for shame and humiliation.' Counsel's argument is not easy to represent or estimate. They say that 'mental pain' of the designated character, 'the suffering from feelings, is intangible, incapable of test or trial', might vary in individuals, 'rests entirely in the belief of the sufferer, and is not susceptible of contradiction or rebuttal.' If all that be granted, it was for the consideration of the jury. It certainly cannot be pronounced a proposition of law

that personal mutilation or disfiguration may be a matter of indifference to anybody, or that sensitiveness to it may vary with 'temperaments' and be incapable of measurement. We see no error in the instruction.''

It will be observed that counsel's argument, which the court found ''not easy to represent or estimate'', was in the very language of Judge Sanborn's opinion from which we have already quoted. See, also, *McDermott v. Severe*, 202 U. S. 600, 26 S. Ct. 709, 50 L. Ed. 1162, 1169.

In 1 Sedgwick on Damages (9th Ed.) 79, § 47, a note reads:

''In a few jurisdictions the courts, falsely following the analogy of the cases where recovery is refused for mere mental suffering, refuse to give what are called the merely 'sentimental' damages, that is, the anguish caused by the contemplation of one's disfigurement.''

In the same work at p. 75, § 47, the author says:

''Mental suffering accompanying physical pain is a subject of compensation. It is difficult in most cases to distinguish the mental from the physical pain, but compensation may be recovered for both.

''Mental anxiety and distress, which, though the direct and natural result of the injury, are independent of it, are subjects of compensation. So one who has been mutilated or crippled by the defendant's fault may recover for the distress of mind because of the disfigurement. So where one was bitten by a dog suspected of being mad, he was allowed to recover for his fear of evil results  *  *  *.''

See 1 Joyce on Damages 274, §§ 223, 224; 15 Am. Jur., Damages, 605, § 186.

According to 4 Sutherland, Damages (4th Ed.), 4651, § 1241:

"The sufferer is entitled to compensation from the person by whose fault the injury occurred for the pain resulting from the corporal hurt so long as it produces pain; for mental suffering naturally resulting from the injury or wrong, and, according to the better opinion, whether such suffering be apprehension and anxiety from the depressing effect of the wrong or induced by its alarming character".

In the same work, p. 4673, § 1243, the view that in assessing damages, shame and mortification arising from a crippled condition may be considered, is said to be "inconsistent with that expressed in some cases to the effect that mental suffering cannot be recovered for after the cessation of physical pain. It is also inconsistent with that view to allow compensation for the mental suffering endured because of the incapacity of the injured person to earn a livelihood."

In McCormick on Damages 316, § 88, it is said:

"The various forms of mental suffering are as numberless as the capacities of the human soul for torturing itself. Only the more obvious kinds of distress most nearly traceable to the injury are accorded recognition as a basis for damages. Beside the mental distress which is the accompanying shadow of physical pain, the courts have most frequently authorized compensation for the following: The victim's fright and terror at the time of the injury, and reasonable apprehension thereafter over the effects of the injury upon his health; apprehension of a pregnant woman of injury to the child; anxiety over inability to make a living; and fear of death or insanity as a consequence of the injury. * * * Most courts permit an allowance for the sadness, humiliation, and embarrassment

ensuing from any scars, mutilation, or disfigurement sustained by the injured person.''

Recovery has been sustained, as already noted, for the apprehension reasonably entertained that blood poisoning would set in as the result of the bite of a dog: *Warner v. Chamberlain,* 7 Houst. (Del) 18 *(nisi prius),* 30 Atl. 638; *Ayers v. Macoughtry,* 29 Okla. 399, 405, 117 P. 1088, 37 L. R. A. (N. S.) 865; *Godeau v. Blood,* 52 Vt. 251, 36 Am. Rep. 751; *Buck v. Brady,* 110 Md. 568, 572, 73 Atl. 277, 132 Am. St. Rep. 459; for the apprehension of death: *Watson v. Augusta Brewing Co.,* 124 Ga. 121, 52 S. E. 152, 1 L. R. A. (N. S.) 1178, 110 Am. St. Rep. 157; for fear of insanity: *Walker v. Boston & M. R. R.,* 71 N. H. 271, 51 Atl. 918; and of cancer: *Alley v. Charlotte Pipe and Foundry Co.,* 159 N. C. 327, 331, 74 S. E. 885.

Among the more recent cases attention is called to *Middlesex & B. St. Ry. Co. v. Egan,* 214 Fed. 747 (C. C. A. 1st), in which it was held that evidence of pain, anguish and solicitude occasioned one by injury to his leg, including apprehension of his inability to labor due to its probable loss, was properly received, and in *Main v. G. R., G. H. and M. Ry. Co.,* 207 Mich. 473 (1919), 174 N. W. 157, where the court affirmed the right to consider as an element of damage humiliation due to disfigurement, a decision difficult to reconcile with the ruling of the Michigan court in *Nevala v. Ironwood,* supra.

Finally, the American Law Institute has thrown the weight of its authority on the side of the broader doctrine, as appears from the following quotations from Vol. 4, Restatement of the Law of Torts:

''A person who has a cause of action for a tort may be entitled to recover as an element of damages

for that form of mental distress known as humiliation, that is, a feeling of degradation or inferiority or a feeling that other people will regard one with aversion or dislike. This state of mind may result from a physical harm   *   *   *'' p. 544.

At p. 545 the following illustration is given:

"A negligently causes B to lose an ear. B is entitled to damages not only for the pain and suffering, but also for the humiliation caused by his appearance."

"As an element of damages for a tort, a person may be entitled to recover for a feeling of anxiety, not only for himself but for others, if this is the expectable result of the defendant's tortious act or if the defendant intended such result." p. 545.

"*   *   *   there is no rule of certainty with reference to the amount of recovery permitted for any particular type of emotional distress; the only limit is such an amount as a reasonable person could possibly estimate as fair compensation. Thus damages can be recovered for the feeling of mortification resulting from a scar or deformity produced by the defendant's act or for the sorrow which a prospective mother would feel over the failure to have her child born alive." p. 548.

■■  Without doubt, adherence to the previous decisions of this court upon this subject would call for rejection of the evidence here in question. We are unanimously of the opinion, however, that the principle of those decisions should be abandoned. It is opposed to the rule adopted by a majority of the courts, to the judgment of authoritative text writers on the law of damages, and, as we think, to the sounder reasoning. To say that a sense of humiliation caused by a disfigurement of the person, or apprehension and anxiety as to some harm which may reasonably be expected to follow an injury, are not, or may not be, the natural

consequences of the injury, is to affirm what cannot be demonstrated to be true, and is contrary to all our thinking upon the subject of proximate causation. To brand such mental distress as "wholly sentimental" is to invite the criticism implied in Circuit Judge Frank's aphorism: "Give a bad dogma a good name, and its bite may become as bad as its bark." *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 Fed. (2d) 978, 984. The real reason for saying that mental anguish of this kind is not to be "regarded as matter proper to form the basis of consequential damages" (*Maynard v. Oregon Railroad Co.*, supra) is the supposed difficulty of measuring the damages and the danger that unscrupulous persons may impose on juries with fictitious claims. That is a practical argument to which courts rightly give attention—an argument, however, which is placed in its proper perspective by the following from 4 Restatement of the Law of Torts, p. 575:

> "It is desirable that responsibility for harm should not be imposed until it has been proved with reasonable certainty that the harm resulted from the wrongful conduct of the person charged. It is desirable, likewise, that there should be definiteness of proof as to the amount of damage as far as is reasonably possible. It is even more desirable, however, that an injured person shall not be deprived of substantial compensation merely because he cannot prove with complete certainty the extent of harm he has suffered. Particularly is this true in situations where there can not be any real equivalence between the harm and compensation in money, as in case of emotional disturbance, or where the harm is of such a nature as necessarily to prevent anything approximating accuracy of proof, as where anticipated profits of a business have been prevented."

■ The reasoning of Justice Henshaw in *Merrill v. Los Angeles Gas & Electric Co.*, supra, is, in our opinion, a complete answer to the contention that mental anguish which does not accompany physical pain, although it flows from a physical injury, is too indefinite and remote to form the basis of a recovery of damages.

In Massachusetts the right to recover damages in actions based on negligence for physical injury resulting from fright is denied: *Spade v. Lynn & Boston R. R. Co.*, 168 Mass. 285, 47 N. E. 88, 60 Am. St. Rep. 393, 38 L. R. A. 512; *White v. Sander*, 168 Mass. 296, 47 N. E. 90; *Smith v. Postal Telegraph Cable Co.*, 174 Mass. 576, 577, 55 N. E. 380, 75 Am. St. Rep. 374, 47 L. R. A. 323. With complete candor the Massachusetts court conceded that the injury could be deemed the proximate result of negligence, and rested its decision on the ground "that in practice it is impossible satisfactorily to administer any other rule", and on the reluctance of courts to approve a rule which "would open a wide door for unjust claims, which could not successfully be met", *Spade v. Lynn & Boston R. R. Co.*, supra. Of these cases Holmes, C. J., said in *Smith v. Postal Telegraph Cable Co.*, supra, that the point decided "is not put as a logical deduction from the general principles of liability in tort, but as a limitation of those principles upon purely practical grounds." And again in *Homans v. Boston Elevated R. Co.*, 180 Mass. 456, 457, 62 N. E. 737, 91 Am. St. Rep. 324, 57 L. R. A. 291, Justice Holmes wrote that the exemption from damages of this kind "is an arbitrary exception, based upon a notion of what is practicable". See 34 Harvard Law Review 260, 273.

When the same question came before this court, however, in *Salmi v. Columbia and N. R. R. Co.*, 75

Or. 200, 146 P. 819, L. R. A. 1915 D, 834, the court, having once determined that the defendant's negligence was the proximate cause of the injury, had no difficulty in sustaining a judgment for the plaintiff. The question of uncertainty and indefiniteness or of the practicability of administering a remedy was not even discussed, though the defendant argued these points in its brief and cited *Spade v. Lynn & Boston R. R. Co.*, supra, and *Smith v. Postal Telegraph Cable Co.*, supra.

In *Hinish v. Meier & Frank Co.*, 166 Or. 482, 113 P. (2d) 438, 138 A. L. R. 1, in which it was held that an action would lie for breach of the right of privacy, the court considered the contention that vindication of this right would open the gates to a flood of fictitious claims, and rejected it, and at p. 506 of the report said, with reference to the argument that the damages are too speculative:

> "The damages may be difficult of ascertainment, but not more so than in actions for malicious prosecutions, breach of promise of marriage, or alienation of affections, and in many cases of libel, slander and assault. The law has never denied recovery to one entitled to damages simply because of uncertainty as to the extent of his injury and the amount which would properly compensate him."

That was a case, it is true, of intentional tort, in which, differently from actions based on negligence, damages are presumed from the wrongful act: 1 Sedgwick on Damages 51, § 43; *Spade v. Lynn & Boston R. R. Co.*, 168 Mass. at p. 28; McCormick on Damages, 88, § 22. But the difficulty which inheres in admeasuring the damages is no greater in the one case than in the other.

■ Reverting now to the specific question involved in this case, we have seen that in six jurisdic-

tions the apprehension of a pregnant woman, injured in her person by the negligence of another, that harm may result from the injury to her unborn child, is such mental anguish as may be properly taken into account in estimating her damages; while in one jurisdiction only, Michigan, a contrary view has been announced, based on reasoning which we are unable to accept. We think that apprehension of that sort is the natural consequence of a blow on the abdomen such as the plaintiff suffered, or at least that a jury could so find, and that it could be mental distress the most acute. The extent of the plaintiff's suffering and the compensation to be awarded must be left to the sound judgment of the jury. In the present instance we think it can not be said that the verdict, in the sum of $1,500, was so excessive as to indicate passion and prejudice.

■ The defendant argues that, at all events, the evidence should not have been submitted to the jury because there was no medical testimony to show that the apprehended result would probably follow from the injury. It seems to us that this contention misses the point. The question is not whether, in the expert view, injury to the unborn child will probably follow, but turns upon the expectant mother's natural mental reaction to the injury.

In *Bowley v. Duca*, supra, the defendant introduced medical testimony that no deformity to the child could have resulted from the injury, and contended, therefore, that apprehension of such deformity on the part of an injured woman could not be considered as an element of damage. As to this the court said:

> "The error in the request, and in the argument in support of it, lies in the failure to appreciate precisely what it is that may be recovered for in

a case like this. The mother cannot recover for the deformity of the child. Proof that the child was or was not deformed when born would not affect the amount of the mother's recoverable damage. Prescott v. Robinson, 74 N. H. 460. The award to her is on account of her apprehensions, entertained before the birth of the child, that certain untoward results concerning the child may follow as a result of the accident. It is a question of her mental suffering before the child is born. The existence of such suffering is not disproved by evidence that if she had been thoroughly versed in medical science she would have known that her fears were groundless.''

■ We adopt as a general rule which should govern in cases of this sort the following from 4 Restatement of the Law of Torts p. 548:

"The extent and duration of emotional distress produced by the tortious conduct depend upon the sensitiveness of the injured person. The court, however, will not permit consideration of disturbances which, conceding full weight to individuality, are wholly abnormal and unreasonable.''

In our opinion the mental anguish testified to by the plaintiff in this case cannot as a matter of law be said to be either abnormal or unreasonable. It is true her fears proved to be unfounded, and she gave birth to a normal child. That, however, was also true in the cases above cited of *Bowley v. Duca, Elliott v. Arrowsmith, Selman v. Cockrell, Gares v. Abate,* and *Muller v. Herrin Motor Lines.*

We think it well to add that nothing in this opinion is to be taken as indicating departure from what seems to be the universally accepted rule that where a physical injury directly causes a miscarriage, while physical or mental suffering attending the miscarriage is a

proper subject for compensation, grief for loss of the child cannot be considered because it is too remote a result of the injury. Sedgwick, *ibid.*, 65, § 44; 25 C. J. S., Damages, 553, note 69; *Thomas v. Gates,* 126 Cal. 1, 58 P. 315; *Morris v. St. Paul C. Ry.*, 105 Minn. 276, 117 N. W. 500, 17 L. R. A. (N. S.) 598; *Hosty v. Moulton Water Co.*, 39 Mont. 310, 102 P. 568; *Western U. T. Co. v. Cooper,* 71 Tex. 507, 9 S. W. 598, 10 Am. St. Rep. 772, 1 L. R. A. 728; *Bovee v. Danville,* 53 Vt. 183; *Hawkins v. Front S. C. R. R.,* 3 Wash. 592, 26 P. 1021, 28 Am. St. Rep. 72, 16 L. R. A. 808; *McGee v. Vanover,* 148 Ky. 737, 147 S. W. 742, Ann. Cas. 1913 E, 500; *Vitale v. Biando,* (Mo. App.) 52 S. W. (2d) 24; *Malone v. Monongahela Valley Traction Co.,* 104 W. Va., 417, 140 S. E. 340.

█ It results that, in our opinion, the trial judge did not err in admitting the evidence objected to nor in submitting to the jury the question of mental anguish here involved. It also results that *Maynard v. Oregon Railroad Co.*, supra, *Boatright v. Portland Ry., L. & P. Co.*, supra, and *Camenzind v. Freeland Furniture Co.*, supra, in so far as they are in conflict with the ruling here announced, must be deemed overruled. It may be that the Maynard and Boatright cases were correctly decided on their particular facts; but we can no longer sanction the restricted concept of mental anguish as an element of damage which was stated to be the basis of those decisions.

We find it necessary, however, to reverse the judgment for an erroneous instruction, duly excepted to by the defendant, and assigned as error. For an understanding of this matter a brief statement of the facts of the accident will have to be given.

█ The plaintiff was driving a Chevrolet coupe south on SE. McLaughlin Boulevard, a four-lane high-

way in the city of Portland. She was travelling in the outside lane of traffic, that is to say, the lane nearest the edge of the highway. At about the same time Foy was driving a Plymouth sedan north on the inside lane for northbound traffic, and the defendant Senders was following Foy at a distance of 100 to 125 yards, driving a Chevrolet automobile. Senders' automobile was likewise on the inside lane of traffic. As Foy approached the intersection of SE. Glenwood Street with SE. McLaughlin Boulevard he slowed up, according to his testimony, to make a left-hand turn and then stopped to allow the south-bound traffic—which included the plaintiff's car—to clear, the front wheels of his car being turned slightly to the left. While it was in this position the Foy car was struck from the rear by the Senders car, and propelled across the west side of the highway and into a collision with the left-hand side of the car driven by the plaintiff. There was conflict in the testimony as to whether Foy signalled his intention to stop and make a left-hand turn.

The plaintiff in her complaint charged the defendant Senders with negligence in operating his automobile at an unreasonable and imprudent rate of speed, in failing to keep it under control, in failing to keep a proper lookout, and in failing to decrease the speed of the automobile or to swerve it so as to avoid a collision with the automobile driven by Foy. No other negligence was charged against Senders in the complaint. In the answer filed by the defendant Consolidated Supply Company there was an allegation to the effect that the plaintiff's injuries were caused by the negligence of the defendant Senders in failing to use the outside lane of travel, which was open and unobstructed and available for the use of the defendant Senders at that time.

The criticized instruction reads as follows:

"Now it is also alleged in the answer of the defendant Consolidated Supply Company as a part of its defense in this case that the defendant Senders failed to use the outside lane of traffic for north-bound traffic on said highway, which was open and unobstructed and available for the use of defendant Senders at said time, and they say that that is one of the acts of negligence on the part of Senders which caused this accident, and that it was through no fault of theirs, Consolidated Supply Company, that the accident was caused. Now I caution you again that even if you find this allegation of negligence on the part of Senders to be true, that in and of itself could not form the basis of any recovery by the plaintiff in this action, because the plaintiff herself did not allege that specific act of negligence. The plaintiff to recover here is bound by the specific acts of negligence alleged in her complaint and cannot recover upon other or different acts of negligence, if any, which the evidence may have disclosed. However, it is proper for the jury to consider this specification of negligence against the defendant William R. Senders in connection with the defense which the Consolidated Supply Company makes on its own account. If the jury feels from the evidence in this case that that act of negligence, if in fact there was such act of negligence, was the sole cause of this accident then, of course, that would exonerate the Consolidated Supply Company.

"Now that requires me to instruct you as to the law applicable to the travel upon the highways of this state where there are traffic lanes outlined. It is provided specifically by statute that: 'Whenever any street or highway has been divided into clearly marked lanes for traffic, drivers of vehicles shall obey the following regulation: (a) A vehicle shall normally be driven in the lane nearest the right-hand edge or curb of the highway when said

lane is available for travel except when overtaking another vehicle or in preparation for a left turn. (b) A vehicle shall be driven as nearly as is practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.' This rule of law applies to all motor vehicle operators making use of the public highways of this state. If you find from a preponderance of satisfactory evidence herein that the defendant William R. Senders violated this specific statutory rule, then the defendant William R. Senders would be guilty of negligence as a matter of law, *and if you further find that that act of negligence was the sole and proximate cause of this accident in question then that would exonerate the defendant Consolidated Supply Company and your verdict then would be against the defendant William R. Senders and in favor of the plaintiff and also in favor of Consolidated Supply Company."*

Since the indispensable condition of recovery by the plaintiff in this class of case is proof of some negligent act alleged in the complaint, and the jury is precluded from basing a verdict for the plaintiff upon negligence not so alleged, the italicized portion of the instruction was erroneous in that it authorized a verdict against the defendant Senders, upon proof of negligence alleged, not by the plaintiff but by the other defendant. It was also erroneous because the hypothesis submitted by the court, if found to be sustained by the evidence, would call for a verdict in favor of Senders as well as Consolidated Supply Company, for if the only negligence proven as the proximate cause of the accident was that which was the subject of the instruction then obviously none of the charges of negligence contained in the complaint were established as the proximate cause. The instruction further

offended against the rule which condemns contradictory instructions, for the introductory part which explained that this particular allegation of negligence "could not form the basis of any recovery by the plaintiff", is inconsistent with the final sentence which authorized the jury to do what they had already been told they must not do.

Since this instruction went directly to the question of the defendant Senders' liability, the error cannot be disregarded.

The judgment must, therefore, be reversed and the cause remanded for further proceedings not inconsistent with this opinion.