Argued and submitted June 3, 1985, resubmitted In Banc February 5, affirmed April 9, reconsideration denied June 6, petition for review allowed July 1, 1986 (301 Or 320)

# SAECHAO,
*Appellant,*

*v.*

# MATSAKOUN et al,
*Respondents.*

## (A8406-03428; CA A34147)

717 P2d 165

Stephen C. Hendricks, Portland, argued the cause and filed the brief for appellant.

Robert E. Barton, Portland, argued the cause for respondents. With him on the brief was Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland.

RICHARDSON, J.

Warren, J., dissenting.

## RICHARDSON, J.

This case presents the questions of first impression of whether and when a person who witnesses the negligently caused injury or death of a member of the immediate family may recover damages for serious emotional distress resulting from witnessing the accident.[1] The trial court dismissed the action as to two of the three plaintiffs[2] for failure to state a claim. A final judgment was entered against those plaintiffs pursuant to ORCP 67B, and they appeal.

Plaintiff alleged:

"II.

"On or about July 29, 1983 two-year old Ou Fou Saechao was riding his tricycle on the sidewalk in the apartment complex known as Halsey Square in Portland, Oregon. His * * * brother, Kae Fou Saechao was immediately adjacent to him. Also on the sidewalk, within fifteen feet and within a 'zone of danger' were his * * * brother, Sou Fou Saechao and one of his sisters, Farm Fou Saechao.

"III.

"At approximately 10:20 a.m. on July 29, 1983, Defendant Khamchana Matsakoun was learning to park a 1982 Volkswagen Quantum Stationwagon that she owned. Defendant Matsakoun was operating the vehicle pursuant to temporary instruction permit No. 3960626.

"At the same time, Defendant Thon Boupha was instructing Ms. Matsakoun in the operation of the 1982 Quantum

---

[1] The Supreme Court noted in *Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or 543, 559, n 18, 652 P2d 318 (1982), that it had not yet examined this precise issue. Neither this court nor the Supreme Court has had occasion to consider it. In *Rogers v. Hexol, Inc.,* 218 F Supp 453 (D Or 1962), the federal district court predicted that Oregon state courts would follow the Restatement of Torts § 313 (1933), and deny recovery to the plaintiff, who had suffered emotional distress in the absence of a physical impact as a result of her son's being injured by a negligently labeled product. Although we reach a similar result, we do not wholly endorse the reasoning in *Rogers.*

*Sease v. Taylor's Pets,* 74 Or App 110, 700 P2d 1054, *rev den* 299 Or 584 (1985), holds that damages for emotional distress without physical harm are not recoverable in a product liability action under ORS 30.920. The plaintiffs in *Sease* did not plead negligence as a ground for recovery. 74 Or App at 117, n 7. *Sease* does not control here, because it rests on an interpretation of ORS 30.920, which is not relevant to this case.

[2] Plaintiff is the guardian ad litem for the three siblings who suffered emotional distress, and he sued on their behalf. We will refer to the children as "plaintiffs" in this opinion.

Stationwagon. Mr. Boupha was standing on the street or sidewalk, outside of the Quantum Stationwagon.

"IV.

"Defendant Matsakoun backed the Quantum Station-wagon up over a curb, across the sidewalk striking Ou Fou Saechao, and smashing Ou Fou Saechao's head and body against the brick wall of an apartment building, killing the child instantly.

"V.

"Kae Fou Saechao tried to grab Ou Fou Saechao's tricycle and pull him out of the way of the oncoming car, but was struck, bruised, contused and physically injured by the car and knocked away from his brother. Kae Fou Saechao, Sou Fou Saechao and Farm Fou Saechao all witnessed the death of their brother and observed the body and scene immediately after the accident."

The complaint alleges that the three children who witnessed the accident all suffered "extreme emotional trauma, which continues presently and which will continue into the future. The trauma has manifested itself in several ways, including nausea, headaches, physical trauma and nightmares." The three claims for relief sought damages for defendants' "negligent infliction of emotional distress." The first claim, that of Kae Fou Saechao, also sought damages for his physical injuries.

The trial court dismissed the second and third claims, those of Sou Fou and Farm Fou. It denied defendants' motion to dismiss the first claim, Kae Fou's, relying, apparently, on the so-called "impact rule," which provides that only a person who suffers an impact from the same force which injures a third person may recover for emotional distress due to wit-nessing the injury to the third person. *See* Prosser and Keeton, Law of Torts 365, § 54 (5th ed 1984). Plaintiffs contend that the "impact rule" is not the law of Oregon and that we should adopt and apply one of several rules which allow recovery in a broader range of cases. We shall discuss each of those theories. Defendants contend that the trial court properly applied the impact rule to dismiss the two claims.

Defendants claim that *Fehely v. Senders,* 170 Or 457, 135 P2d 283 (1943), holds that, in order for a person to recover for emotional distress, she must have suffered an antecedent

physical injury. In that case, the plaintiff was a pregnant woman who was injured in a car accident. The issue was whether the plaintiff's apprehension that her child might be born dead or deformed as a result of an injury to her person was an element of damages. 170 Or at 460. The opinion first states the general rule that, when a person is injured physically, she may also recover for mental distress and anguish which naturally and directly flow from the physical injury. 170 Or at 461. The rest of the opinion deals with what types of consequential mental suffering are properly compensable and concludes that any emotional distress which is not "abnormal or unreasonable" is compensable. 170 Or at 475. *Fehely* holds only that the plaintiff could recover for mental anguish resulting from her own physical injury, but it does not answer the question here of whether a person *must* suffer a direct injury before that person can recover damages for emotional distress.

Several Oregon cases have permitted recovery for emotional distress that was not the result of a physical injury. *See, e.g., Mooney v. Johnson Cattle,* 291 Or 709, 634 P2d 1333 (1981) (intentional interference with a contractual relationship); *Turman v. Central Billing Bureau,* 279 Or 443, 568 P2d 1382 (1977) (intentional infliction of emotional distress); *McEvoy v. Helikson,* 277 Or 781, 562 P2d 540 (1977) (negligence in returning passports to mother); *Fredeen v. Stride,* 269 Or 369, 525 P2d 166 (1974) (conversion of a dog); *Macca v. Gen. Telephone Co. of N.W.,* 262 Or 414, 495 P2d 1193 (1972) (negligent listing in telephone directory, considered to be a nuisance); *Douglas v. Humble Oil,* 251 Or 310, 445 P2d 590 (1968) (trespass); *Hovis v. City of Burns,* 243 Or 607, 415 P2d 29 (1966) (unauthorized disinterment of spouse); *Hinish v. Meier & Frank Co.,* 166 Or 482, 113 P2d 438 (1941) (invasion of privacy). In each of those cases, however, the plaintiff was the *direct* victim of the tortious conduct, although no *physical* injury was involved. In *Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or 543, 652 P2d 318 (1982), the court specifically stated that the fact that an injury is solely emotional or psychic is no reason to deny damages.

The decision as to whether the pleadings can support recovery in this case must be made as a matter of policy. In *Meyer v. 4-D Insulation Co., Inc.,* 60 Or App 70, 652 P2d 852 (1982), we denied recovery for emotional distress caused by

negligent damage to the plaintiff's property. In that opinion we categorized the cases cited above and others in an attempt to distill a principle indicating when damages for emotional distress are appropriate. Noting that the cases do not form a precise pattern, we described four categories in which recovery is allowed: intentional torts, private nuisance, invasion of privacy and miscellaneous cases. 60 Or App at 73-74. We noted a tendency of the Supreme Court to grant recovery by species of case as a matter of policy and that the categories tended to be defined on an *ad hoc* basis, not on the basis of simple foreseeability. Likewise, in *Flowers v. Bank of America,* 67 Or App 791, 794, 679 P2d 1385, *rev den* 297 Or 601 (1984), we examined the defendants' conduct to determine

> "* * * whether that careless invasion is, as a matter of policy, of sufficient importance to merit protection by an award of damages if the only result is emotional distress. * * *"

The negligence asserted in *Flowers* was the defendant's notifying a restaurant that the plaintiff's credit card was cancelled, which caused the restaurant to refuse to honor the card. In both *Meyer* and *Flowers* we held that the nature of the defendants' conduct and the plaintiffs' emotional upset did not warrant an extension of liability.

■ Although in *Meyer* we stated that cases in the "miscellaneous" category appear to recognize liability on an *ad hoc* basis, there is a common thread to those cases. In each the court determined, as a matter of law, that the defendant owed the plaintiff a duty of care and that the kind of harm which resulted was reasonably foreseeable. Considering the cases in which the Supreme Court has awarded damages solely for emotional distress, we think that serious emotional injuries sustained as a result of observing a sibling killed can be compensable under some circumstances. Under the rationale of *Fehely v. Sanders, supra,* it seems clear that the trial judge correctly ruled that Kae Fou, who was physically injured, has stated a claim that would allow his recovery of damages for emotional distress. The question is whether Farm Fou and Sou Fou, who suffered no direct injury, have a claim for such damages.

■ In *Norwest v. Presbyterian Intercommunity Hosp., supra,* the Supreme Court rejected the plaintiff's claim for loss of "parental consortium" due to the defendants' negligent

incapacitation of the plaintiff's mother. The court treated the claim for loss of society and companionship as one for tortious injury to a family relationship and looked to legislative history to find support for such a cause of action. The court held that legislative policy did not support its creating an "exception from the limits on negligence liability for one person's loss from injury to another." 293 Or at 565. The court in *Norwest* assumed that the plaintiff's injury could well prove to be real, severe and reasonably foreseeable by the defendants; nevertheless, the court ruled:

"* * * The obstacle to plaintiff's action is that ordinarily negligence as a legal source of liability gives rise only to an obligation to compensate the person immediately injured, not anyone who predictably suffers loss in consequence of that injury, unless liability for that person's consequential loss has a legal source besides its foreseeability." 293 Or at 569.

Although the emotional distress suffered by Sou Fou and Farm Fou here is arguably more proximately related to the event that injured the third person than was the loss of consortium alleged in *Norwest,* we conclude that similar principles are involved. Like the plaintiff in *Norwest,* Sou Fou and Farm Fou were persons who "suffer[ed] loss in consequence of [the] injury" to another person, and the only basis for concluding that they should receive compensation is that their consequential loss might be found, as a matter of fact, to have been foreseeable.

Four different rules appear to have evolved as the tests for determining when emotional distress damages are recoverable in situations similar to the one in this case. The first is the impact test, requiring that there be a direct accompanying injury to the person who suffers the emotional distress as a prerequisite to its compensability.

The second rule, zone of danger, would allow recovery for serious emotional distress due to witnessing a fatal injury to a third person only if the plaintiff was personally within the zone of danger of physical impact from the defendant's negligence. This might be the current rule in the majority of states, *see Bovsun v. Sanperi,* 61 NY2d 219, 228-29, 473 NYS2d 357, 461 NE2d 843 (1984), and is also the position adopted by the Restatement (Second) Torts, § 436 (1965). The facts plaintiffs pleaded here were within the scope of that rule. The New York

Court of Appeals has recently reaffirmed the zone of danger rule as well as its rejection of both the impact rule and a broader rule. *Bovsun v. Sanperi, supra,* holds:

> "* * * [W]here a defendant negligently exposes a plaintiff to an unreasonable risk of bodily injury or death, the plaintiff may recover, as a proper element of his or her damages, damages for injuries suffered in consequence of the observation of the serious injury or death of a member of his or her immediate family—assuming, of course, that it is established that the defendant's conduct was a substantial factor bringing about such injury or death." 61 NY2d at 230-31. (Footnote omitted).

The third rule was first adopted by California in *Dillon v. Legg,* 68 Cal 2d 728, 69 Cal Rptr 72, 441 P2d 912 (1968), which rejected the zone of danger rule in favor of a broader rule based on the foreseeability of injury. *Dillon* set out three factors to guide courts in a case-by-case determination of liability: (1) whether the plaintiff was located near the accident; (2) whether the emotional distress resulted from observing the accident or learning about it from others; and (3) whether the plaintiff and the victim were "closely related." 68 Cal 2d at 740-41.

The fourth, and most expansive rule, would compensate a psychic injury simply on the basis of its reasonable foreseeability. Supporters of this rule reject the restrictive guidelines of *Dillon.* Only one state, to our knowledge, has gone to this extent to compensate psychic injury. *Paugh v. Hanks,* 6 Ohio St 3d 72, 451 NE2d 759 (1983), does not even require that another person actually be injured by the conduct of the defendant if an injury is foreseeable and is in fact feared by the plaintiff.

The straight foreseeability test turns wholly on the rationale for imposing liability that the Supreme Court rejected in *Norwest.* The choices available to us, therefore, are the impact rule, the zone of danger rule or the *Dillon* rule (or some variation of them). We do not see that the *Dillon* test differs in any significant way from the zone of danger rule for purposes of this case. The first and second prongs of *Dillon* are necessarily met if the plaintiff was in the zone of danger, and the third prong—close relationship—was also satisfied here. Our adoption of either the *Dillon* or zone of danger test,

although not squarely contrary to the holding in *Norwest v. Presbyterian Intercommunity Hosp., supra,* would run afoul of its admonition against recognizing new causes of action for indirect injuries resulting from a direct injury to another. *Bovsun v. Sanperi, supra,* concludes that the zone of danger rule entails a new element of damages, but does not create a new duty or a new cause of action. We do not agree. Allowing a plaintiff who has suffered emotionally by witnessing an injury to another to recover damages simply because the plaintiff was within the zone of danger would establish a cause of action not previously recognized in Oregon.

The impact rule seems to us to reflect the best policy option. The line it provides is clear, and it creates a clear relationship between compensability and the plaintiff's being a victim of a breach of duty. Although the zone of danger rule would undoubtedly result in recovery by more persons who sustain serious emotional distress, it would not provide rational differentiations between those who may and those who may not recover. For example, a parent who witnesses a child being struck by a car is not physically endangered if the parent is watching from a window, but is endangered if the parent is outdoors and in close proximity to the child; however, it is not likely that the emotional trauma would differ because of the different vantage points. A rule is not superior to its alternatives simply because it allows recovery to more plaintiffs, if there is no connection between the nature of the damages and the reason for allowing the additional plaintiffs to recover them. There is no relationship between being in the zone of physical danger and being subject to emotional traumatization from witnessing the event. We hold that the trial court did not error in dismissing the claims.

Affirmed.

**WARREN, J.,** dissenting.

I acknowledge that choosing a rule circumscribing a defendant's liability to bystanders involves a degree of arbitrariness. The fact that a decision is arbitrary in some respects does not mean that it cannot be principled. In picking the impact rule, the majority not only ignores Oregon precedents, but also clings to a principle which has been widely repudiated and leaves Oregon tort law in an archaic position. Moreover, the majority's decision is not supported by any

persuasive reasoning. I would select a rule which can allow recovery at least by plaintiffs who plead that they are in the zone of danger of defendants' negligence.

The only reason which the majority gives to support the impact rule is that it provides a *"clearly identifiable"* line to distinguish those persons who can recover from those who cannot; *i.e.*, the person has also suffered an impact due to a defendant's negligence. 78 Or App at 348. The majority does not question the proposition that emotional injuries due to witnessing a negligently caused injury to a third person are compensable; it only seeks a "bright line" rule to determine who may recover and who is precluded from recovery. The opinion gives no other principled reason for allowing recovery under the impact rule. The majority criticizes the zone of danger rule, asserting that "[t]here is no relationship between being in the zone of physical danger and being subject to emotional traumatization from witnessing the event." 78 Or App at 348.[1] That criticism reveals the arbitrariness of the zone of danger rule, which I acknowledge, but the rule the majority adopts is subject to the very same criticism.[2] Under the impact rule it is possible for one who receives an impact to decline to sue for his own physical injury and to seek recovery for emotional harm due solely to witnessing injury to another. Under the impact rule there is no causal, logical or necessary relationship between the impact and the injury for which

---

[1]This assertion of the majority is not necessarily so. There may in fact be a rational basis to support the view that a person who is also put in danger of physical injury from a source suffers unique psychological symptoms when another person is injured or killed by the same source. Psychiatrists label this phenomenon the "survivor syndrome" and list guilt and self-hate as some of the symptoms suffered by persons who by a "near miss" escape injury or death which others suffer. *See* Berger, "The Survivor Syndrome: A Problem of Nosology and Treatment," 31 Am J Psychotherapy 238 (1977); Volkem, "Symptom Formation and Character Changes Due to Upheavals of War: Examples from Cyprus," 33 Am J Psychotherapy 239 (1979), *citing* Niederland, "Clinical Observations of the Survivor Syndrome," 49 Int'l J Psycho-Analysis 313 (1968). Although this argument was not asserted by the parties, nor have I seen it discussed in any other case or the legal periodicals, the "survivor syndrome" may justify applying the zone of danger test and rejecting both the narrower and the broader rules.

[2]The majority's criticism of the zone of danger rule in this respect does not justify a rejection of the *Dillon* rule, under which a plaintiff is compensated not because he was actually or nearly hit, but simply because he witnessed the injury to the third party. That belies the majority's assertion that "the *Dillon* test [does not differ] in any significant way from the zone of danger rule for the purposes of this case." 78 Or App at 347.

recovery is sought. I disagree that persons who are in the zone of danger but sustain no impact should be precluded from recovering for an emotional injury that is the same as that suffered by those who happen to receive an impact simply for the sake of a bright line.

The impact rule was the result of the law's early reluctance to recognize mental conditions as a genuine injury. The requirement of an impact was thought to guarantee that an emotional injury was genuine. Since 1890,

> "[T]he great majority of courts have * * * repudiated the requirement of 'impact,' regarding as sufficient the require- ment that the mental distress be certified by some physical injury, illness or other objective physical manifestation.* * *" Prosser and Keaton, *Torts* 364 (5th ed 1984).

The impact rule for bystander recovery has been repudiated in most states since *Dillon v. Legg,* 68 Cal 2d 728, 69 Cal Rptr 72, 441 P2d 912 (1968), was decided. Pearson, "Liability to Bystanders for Negligently Inflicted Emotional Harm—A Comment on the Nature of Arbitrary Rules," 34 U Fla L Rev 477, 488 (1982) (noting four states which still retained the impact rule in 1982). The zone of danger rule is asserted to be the majority rule, *see Bovsun v. Sanperi,* 61 NY2d 219, 228-29, 473 NYS2d 357, 461 NE2d 843 (1984), and the *Dillon* rule is certainly the emerging trend in the nation. Bell, "The Bell Tolls: Toward Full Tort Recovery for Psychic Injury," 36 U Fla L Rev 333, 339 n 33 (1984). Zone of danger is also the position adopted by the *Restatement (Second) Torts,* § 436 (1965),[3] which requires that there be physical symptoms of the

---

[3]*Restatement (Second) Torts* § 436 (1965), provides:

"(1) If the actor's conduct is negligent as violating a duty of care designed to protect another from a fright or other emotional disturbance which the actor should recognize as involving an unreasonable risk of bodily harm, the fact that the harm results solely through the internal operation of the fright or other emotional disturbance does not protect the actor from liability.

"(2) If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.

"(3) The rule stated in Subsection (2) applies where the bodily harm to the other results from his shock or fright at harm or peril to a member of his immediate family occurring in his presence."

emotional injury. Our concern should be with adequate proof of serious emotional injury and not with an outmoded requirement of an impact which is unrelated to the injury asserted.

It is clear to me that adoption of the impact rule is not possible, given Oregon precedents. The majority cites many cases in which the Supreme Court has allowed recovery for emotional distress without an antecedent physical injury. 78 Or App at 344. The majority also notes that the court in *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or 543, 558, 652 P2d 318 (1982), stated that the fact that an injury is solely emotional or psychic is no reason to deny damages. *See also Melton v. Allen*, 282 Or 731, 736, 580 P2d 1019 (1978) ("damages for mental disturbance without accompanying physical injury or consequences" allowable where there are "special circumstances of considerable magnitude"). None of the cases cited by the majority supports the proposition that damages for emotional distress are recoverable only when there has been an impact; in fact, the cases clearly point to the proposition that such damages may be recovered irrespective of any impact. The Oregon Supreme Court has not been reluctant to allow compensation for emotional distress when it is *only accompanied* by physical symptoms, as were pled in this case. *See Melton v. Allen, supra.*

The majority appears to think that *Norwest* requires

---

The *Restatement* rule would compensate only physical harm caused by emotional disturbance. Plaintiffs in this case did plead that they suffered physical symptoms.

The rationale for this rule is stated in *comment f:*

"The reason for this exception to the general rule that there cannot be recovery for emotional disturbance, or its consequences, arising from the peril of a third person lies in the fact that the defendant, by his negligence, has endangered the plaintiff's own safety and threatened him with bodily harm, so that the defendant is in breach of an original duty to the plaintiff to exercise care for his protection. When such a duty is violated, the defendant is not relieved of liability for the bodily harm to the plaintiff which in fact results, by reason of the unusual and unforeseeable manner in which it is brought about. (See § 435.)"

Illustration 3 describes a situation in which the plaintiff did perceive the injury:

"A negligently leaves a truck insecurely parked at the top of a hill. Because of this negligence the truck starts down the hill. B and C, her child, are in the street in the path of the truck. The truck swerves, misses B, and strikes C. B, who is watching C, does not see the truck coming, and is not alarmed for her own safety, but suffers severe shock and resulting serious illness at the sight of the injury to C. A is subject to liability to B for the shock and her illness."

the result it reaches, asserting that the injuries in this case are "consequential" and "indirect." 78 Or App at 346, 348. I strongly disagree. The injuries suffered in the present case are distinguishable from the injury claimed in *Norwest* in several respects. First, there the loss of consortium was a consequence of the primary injury to the plaintiff's mother and occurred after that immediate injury. The court said that, as a matter of policy, such damages are not recoverable in Oregon. In this case, the siblings' injuries were immediate and contemporaneous with the fatal injury to Ou Fou and were caused by witnessing his death. The injuries in this case are *direct* results of defendants' negligence.

Second, the type of injury claimed in this case is sufficiently different that *Norwest* is not a persuasive precedent. The plaintiff in *Norwest* sued for the loss of consortium of his parent. Plaintiffs in this case seek recovery for their emotional and physical trauma which is a distinct type of injury. The children here would probably be precluded by *Norwest* from suing for the loss of consortium of their brother if he had only been injured,[4] but their emotional injury from witnessing the fatal accident is a direct, separate and, I would conclude, legally cognizable type of damage.

Third, even if the injuries in this case are correctly characterized as "indirect" and "consequential," they are still not precluded under *Norwest,* which held that consequential emotional injuries are compensable if the "loss has a legal source besides its foreseeability." 293 Or at 569. That principle was recently reiterated in *Anderson v. Fisher Broadcasting Co.,* 300 Or 452, 458-59, 712 P2d 803 (1986):

> "Generally, Oregon decisions have not allowed recovery for injury to a stranger's feelings as such, unless the infliction of psychic distress was the object of defendant's conduct or *the conduct violated some legal duty apart from causing the distress.* * * * In the absence of *some other duty* or relationship of the defendant to plaintiff, it does not suffice for tort liability that defendant's offensive conduct is an intentional act." (Emphasis supplied.)

That legal source of liability or independent legal duty is

---

[4]ORS 30.020(2)(d) provides that only the decedent's spouse, children and parents may recover for the loss of society and companionship which is due to a wrongful death.

present in this case, because defendants breached a duty of care to plaintiffs who were within the zone of danger of physical harm created by defendants' negligence. That is the principle recognized in *Restatement (Second) Torts* § 436 (1965), *See* n 3, *supra.*

The majority does not dispute that emotional distress due to witnessing an injury to another should be compensable in certain circumstances. The dispute turns on the circumstances in which compensation should be recoverable. The initial question in a tort case is "whether the defendant owed any duty whatsoever to the plaintiff with respect to the type of harm suffered by the plaintiff * * *." *Dewey v. A. F. Klaveness & Co.,* 233 Or 515, 541, 379 P2d 560 (1963) (O'Connell, J., specially concurring). That is a question of law, to be resolved by the court as a matter of policy. Considering the cases in which the Supreme Court has approved the allowance of damages for solely emotional distress,[5] I think that the serious emotional injuries sustained as a result of observing a sibling killed should be compensable under the facts of this case. I would conclude, as a matter of policy, that all plaintiffs were

---

[5]For example, in *Fredeen v. Stride,* 269 Or 369, 525 P2d 166 (1974), the plaintiff had left her injured dog with the defendant veterinarian to be "put to sleep." The defendant did not dispose of the dog, but instead let two assistants nurse it back to health and find it a home. The plaintiff ultimately learned that the dog was alive and thought that it was living with a family in her neighborhood, and she suffered mental anguish contemplating the possibility that the dog and her children would recognize each other and attempt to reunite. The Supreme Court held that the veterinarian's conduct in "converting" the dog was sufficiently aggravated to support the award of $4,000 for mental anguish and a "sufficiently aggravated violation of societal interests" to justify an award of $700 as punitive damages. 269 Or at 373-75.

In *Macca v. Gen. Telephone Co. of N.W.,* 262 Or 414, 495 P2d 1193 (1972), the defendant telephone company erroneously listed the plaintiff's telephone number in a Yellow Pages advertisement as the after-hours number for a florist. The plaintiff sued for negligently inflicted emotional distress resulting from answering phone calls at all hours of the night and recovered $1,000. The Supreme Court held that the defendant's act "resulted in an invasion of plaintiff's right to enjoy her property without unreasonable interference" and thus constituted a private nuisance, for which the plaintiff was entitled to recover damages for mental distress resulting from the defendant's negligent act. 262 Or at 418.

More recently, in *McEvoy v. Helikson,* 277 Or 781, 562 P2d 540 (1977), the Supreme Court held that the defendant was liable for his negligence in misdelivering passports which allowed the plaintiff's former wife to remove the plaintiff's child from this country, contrary to the custody provision of a divorce decree. The court held that the defendant breached the duty which he owed to the plaintiff to deliver the passports in a specified way and that the plaintiff could recover for his anguish and mental suffering.

owed a duty here, because they were in an area where defendants' conduct posed a substantial risk to them of physical harm.

The New York Court of Appeals recently defended its adherence to the zone of danger rule in *Bovsun v. Sanperi, supra,* because, *inter alia,* it does not create a new duty, but simply enlarges the scope of recoverable damages. 61 NY2d at 233. I understand that conclusion to be based on the following reasoning. A defendant, under general tort law principles, owes a duty of due care to any person to whom physical injury is reasonably foreseeable if the defendant is negligent. If the defendant acts negligently, he breaches that duty. If the person is physically injured, he may recover damages to compensate for his physical *and* emotional injuries. Under the impact theory, a person in the same position who sustains an emotional injury but avoids the impact is precluded from recovery, although as to him the same duty is breached. The zone of danger rule enlarges the remedy to allow recovery of damages for serious emotional distress caused when a person within the zone of danger witnesses an injury to a third person. The rule allows all people who are in substantially the same position with respect to a tortfeasor to recover for suffering the same kind of harm without regard to the irrelevant requirement of an impact.

As stated above, the initial question for determining tort liability is the existence of a duty owed by the defendant to the plaintiff. The flaw in the impact rule is that it makes an after the fact determination of duty. Under the impact rule, a defendant owes a duty to protect from emotional distress only those persons whom the defendant, by his negligence, also hits. The zone of danger test recognizes that whether a duty exists to protect a person from harm should be determined *before* any injury occurs. A defendant owes a duty of care to all persons who are imperiled by his conduct. Again, this is the rationale of the *Restatement. See* n 3, *supra.* Because people owe other people who are in the foreseeable zone of physical danger a duty to protect them from physical harm, I think it is appropriate to extend the duty to protect those people from serious emotional harm which is due to witnessing the negligent injury to someone with whom they have a close personal relationship. Given that this sort of emotional injury is compensable, there is no compelling reason to make recovery

depend on the totally fortuitous and irrelevant consideration that the defendant did or did not make physical contact with the plaintiff.

I believe that adoption of the impact rule is both inconsistent with Oregon precedents and unwarranted in view of its near-universal modern rejection. The choice is thus between the zone of danger and the *Dillon* rules. We would not need to decide in this case which of these two rules is supported by the more weighty policies, because plaintiffs have stated claims under either rule. I would hold that plaintiffs stated claims for which relief can be granted, and would remand for trial. Accordingly, I dissent.

Buttler, Rossman and Newman, JJ. join in this dissent.